Page 18-1290 Century Communities, Inc. during a visit at Century Communities of Georgia, LLC. Petitioner v. Secretary of Labor, et al. Mr. Foltz for the petitioner, Ms. Chong for the response. Before we begin, the court would like to announce that at the close of the second argument today, we'd like counsel to stick around so we can come down and introduce ourselves to you and greet you personally. So we'll do that after the second case. Thank you, Your Honor. With that, Mr. Foltz. May it please the court. My name is Ed Foltz. I'm a partner with the law firm of Fisher & Foltz in Atlanta, Georgia, representing the petitioner in this matter, Century Communities. I want to thank the court for allowing us the opportunity to come and do an oral argument before you all, and I'd like to reserve two minutes for rebuttal. As you're aware, this case involves a fatality, and of course, any fatality is a tragedy. But that in and of itself does not eliminate the Secretary's burden to establish a violation of the cited standard. In this particular case, 29 CFR 1926-1408A2, which is part of the construction standard, or to follow its own directives and requirements under the multi-employer doctrine. As you're aware, and it's set forth in the briefs there, that the burden... You speak of burden. The burdens of our analysis has sort of shifted here because of the posture of this, right? But what we're looking at, the standard of view that we are using to evaluate the Secretary's decision is different than what you just stated, right? Yes, Your Honor. So what is our standard of review? Well, the ALJL decision cannot be upheld if it is arbitrary, capricious, or abusive. And that's a very deferential standard, right? I mean, right now, we're just looking to see if there's substantial evidence. With respect to whether the fact can be upheld. It doesn't need to be compelling evidence. It's just substantial evidence. Right. And also with respect to the ALJL's credibility determination is based on a patently unsupported decision. Anyway, as I said, the standard, the burden that the Secretary has to show in this particular case was, and the judge had to demonstrate that it was that the standard applied, that the standard was violated, the employees of the employer were exposed, and that the employer knew, i.e. actual knowledge, or with an exercise of regional diligence, i.e. constructed knowledge. Doesn't this case really turn on the credibility determination that the ALJ made about Mr. Gaddis? To a certain degree. She just didn't believe him, right? She thought the evidence showed that somebody, if not Mr. Gaddis, at least somebody from Century was there that morning. Saw the crane, saw the danger, and did nothing. Your Honor, that's correct. That's what she stated. She indicated in her decision that she believed that Mr. Gaddis was the, quote, most likely person. And if there's substantial evidence supporting that finding, you lose, right? Well, that would be correct. But our position is that we – Supporting the proposition that someone was there. Right. It doesn't even have to be Gaddis. Well, I would agree with that, Your Honor, except I would note there once again, with respect to the other persons, if you want to talk – she mentioned about the other construction managers. Each one of those construction managers in their testimonies stated that they were not – did not see the crane up there. They were not at Lot 51. That there were other portions of the subdivision working on other things. And in fact – and that was never rebutted or never discredited by the judge in her decision. So to say that, well, in addition to saying, well, it could have – it must have likely was Gaddis. But if it wasn't, it's somebody else that one of the other people must have wandered by. But there's no evidence in the record that shows that. And clearly, the only evidence that's in there is that the manager said, we weren't there. I'm sorry. I thought another employee testified that he saw someone there. There were two – well, it was two people. There were two people that were – or two statements made by two different people. Sadwick was the crane operator. He said he saw someone there off to the distance, didn't know who it was, couldn't recognize who he was. And Sadwick was the first time he was there. But it's more than that. They had the markings of – Well, they said it was – on him was a purple – he said it was a purple shirt. So – and really, the judge, if you look at the decision, did not really focus on him. It was more on Mr. Mendes with respect to the – with respect to the knowledge. But once again, on his testimony, he's indicated that he did not really know who it was. He didn't have any idea it was. He said he had a polo shirt on. But when he was asked on cross-examination, do you know that this person was from Century Communities? He said no. And so clearly, this clear speculation, you know, that this most likely was the person, is not the basis for a credibility determination or a determination of that particular fact. Specifically, when Mr. Gaddis has continually asserted during the investigation, during his deposition, during the hearing, that he was not on Lot 51 at that time until after the accident occurred. So I – yes, ma'am. Yeah, Mr. Falk. So Century relies on the Peter Miller decision. Pardon me? The Peter Miller decision from the ALJ. Uh-huh. And so how does that apply here? Because that case applied to someone who had no authority to abate the hazard, to an employer who had no authority to abate the hazard. But it seems like Century here does have that authority. And so I'm just wondering how you think that decision applies. Well, I think here in this particular case, I mean, and you had a number of different cases that were actually cited. Sasser, Manuel, and Falby, and Centimark. Those were the cases that kind of talked about whether or not there was some connection to this alliance, if it was reasonable to look at that. And clearly, in these particular cases, if you look at Sasser, it really is on point in this particular case. Because in that case, Sasser did not have any employees. It was a crane case also. Did not have an outside crane operator working on it. Did not have any employees there. Same thing as Century here. However, on Falby, on Manuel, those two cases particularly, and the Secretary cites heavily on both, and the judge looks at Falby. But in those cases, the employer, the cited employer, actively was working with the other subcontractors,  and then also had knowledge of the hazard, and actually had knowledge of the type of job that they were doing. In Falby, I believe there was a question about construction drawings. And they knew how to read that. They had worked with the company that did the drawings, so they were aware of it. They were pouring cement, that's what they did. And that's where the hazard is. So there's kind of a distinction in that respect, in that from here, we have, I believe, no evidence that shows that Century had an employee at the accident site at the time of the accident. I think that's pretty much undisputed. There's no indication that there was an employee there from Century. In fact, the other thing, going back to your question, Your Honor, is with respect to gas. Judge Mason determines it's most likely gas. I can't say for sure, but I think it's most likely gas. But she left one thing out. And that one thing was that, and she never disputed his testimony, Mr. Hardin, one of the company's finishing manager, stated in his testimony, I was with Gaddis at the time of the inspection, during the inspection prior to the accident. So Gaddis was with me at the other end of the subdivision, working with me. We were working on two sites that were doing it. With respect to, I think, on constructive notice, I think we talked a little bit about this. You're into your rebuttal time. That's fine. I just wanted to notice. Okay. Well, I want to try to just touch base on a couple of things, just on the constructive notice. Gaddis did not know. I mean, first of all, the judge issues, with respect to constructive knowledge, he's always looking at Gaddis, and the constructive knowledge discussion is in the footnote. And clearly, Gaddis did not know that the crane had been ordered. The trusses had been delivered. He had asked them to be put on the far side of the side. He testified he didn't see anything that would lead him to believe that the crane would be there. He was there the night before, day before, saw where they were, felt that it was going to be at least another one or two days before they would be lifting the trusses, so he understood that there. And so there was no really, he did not know that they were going to move the trusses either. The trusses were on the far left-hand side, away from the hazard of the power lines. With respect to reasonable reliance, the judge based a decision of determination that had, the century, the plainly seated crane was set up too close. Well, once again, with respect to reasonable reliance, you're focusing on the maneuvering of the crane is where the hazard is. The crane could be anywhere as long as it's being set up properly. And if you look clearly in the deposition of Mr. Sadwick, he goes in great detail of what he did to set up this crane so that it would not be a result in, that they would not get exposed to the wires. Unfortunately, he made a mistake. Your time is up. Unless my colleagues have questions, we'll give you a little bit of time back. Thank you, Your Honor. Thank you. We'll hear from the Department of Labor now. Good morning. Good morning. Good morning. May I please report, my name is Jen Chong, and I am representing the Secretary of Labor. In this case, Century knew of the electrical hazards from the overhead power lines, which ultimately killed one man and severely injured another. Century, however, failed to take any reasonable actions to prevent this violative condition. As the ALJ found, Century failed to take reasonable actions as a controlling employer. There is also substantial evidence to support the ALJ's finding that Century had both actual and constructive knowledge of the violative condition. This Court should therefore affirm the ALJ's decision. What do you do with your friend's argument about Mr. Gaddis' testimony? I think it was Mr. Hardin, or I can't remember the name, who said that he was with him the entire time. Your Honor, the Secretary has reviewed the testimony that Century points to in its brief, but that testimony was not conclusive of the fact that Mr. Gaddis had no opportunity to remind me, because I've forgotten, did the administrative law judge take up that issue that Mr. Hardin had claimed, that Mr. Gaddis was with him the whole time, and therefore it wasn't possible for him to be on the site? I just don't recall. Do you? Your Honor, I do not recall. If she did not, is that a problem for the government here? No, Your Honor, because the ALJ made a credibility determination that Mr. Gaddis was an unreliable witness. She found his testimony to be untrustworthy, for his testimony to be self-serving and to be conflicting, and based on what she had heard and seen. But we're not talking about another witness who corroborates Gaddis' story. Did the administrative law judge analyze that other witness and make a credibility determination, for example? A credibility determination of Mr. Hardin? Yes. I believe that she had not in her decision. Is that a problem? In this case, no, Your Honor, because the ALJ, because the facts show that more likely than not it was Mr. Gaddis who employee number one had spoken to before the accident had occurred on the morning of the fatal incident. How would you distinguish Sasser, which is a case that Century relies on? Because there the commission said that an employer is justified in relying upon the specialist to protect against hazards related to the specialist's expertise, so long as the reliance is reasonable and the employer had no reason to foresee that the work will be performed unsafely. So why wouldn't that same reasoning apply here, where Century didn't operate the crane and hired specialists to do so, specialists who had been working there without incident for several months? Your Honor, in Sasser, the crane operator had performed work at that specific work site three to four times without any incident. In this case, however, it was Mr. Shadwick's first day at this subdivision and it was the first time this crane company had encountered overhead power lines at this subdivision. Also, in Sasser, employees had pointed out the location of the power lines. However, in this case, Mr. Gaddis had failed to notify the subcontractors, including Mr. Shadwick, that there was this hazard from the overhead power lines. So these are key differences between this case and the Sasser case. It was also unreasonable for Century to rely on this crane operator because Lot 51 was one of only two lots on the subdivision that had overhead power lines running through it. And Mr. Gaddis was the specific supervisor that had been assigned to Lot 51 and had the responsibility of identifying site-specific hazards and for informing subcontractors of these type of hazards. However, Mr. Gaddis failed to inform Mr. Shadwick of this hazard. And therefore, the Sasser case does not apply in this case. In regard to the issue of OSHA's multi-employer citation policy, the ALJ properly found that Century, as a controlling employer, failed to exercise reasonable care to detect and to prevent violative conditions at its worksite. Under OSHA's multi-employer citation policy, OSHA may cite a controlling employer at its worksite for failure to exercise reasonable care. And here, the parties have stipulated that Century was a controlling employer because it had supervisory authority over its worksite, including the authority to correct safety and health violations or to require others to do so. The ALJ properly found that Century did not exercise reasonable care because although Mr. Gaddis, the supervisor specifically assigned to Lot 51, knew of the electrical hazards from the overhead power lines, he failed to take any reasonable actions. He knew that the trusses had been delivered when he had visited Lot 51 the day before the fatal incident, and he had therefore known that a crane would be arriving within a few days to lift the trusses onto the house. He therefore had known of the hazard and the imminent crane activity that was about to occur. However, he failed to follow up with the subcontractors to see how they would address the hazard of the overhead power lines. Therefore, even though Mr. Gaddis had known of the hazard, he failed to take any reasonable actions to prevent the violative condition in this case. In regard to the issue of employer knowledge, Your Honor, the Secretary may meet its prima facie burden by showing either actual or constructive knowledge, and here there is substantial evidence to show that, substantial evidence to support the ALJ's finding that Century had both. As Your Honors have discussed earlier, the ALJ found that there were two instances shown in the record that prove that someone saw a Century manager on the morning of the fatal incident. Mr. Shadwick, during his deposition, stated that he had seen a Century manager pass by Lot 51 the morning of the fatal incident, and employee number one also testified that he had actually spoken to a Century manager that morning. That manager had stopped by in his blue truck and had asked whether everything was okay and if they needed anything, and Mr. Gaddis was a manager that drove a blue truck that day on the morning of the incident. The record also shows that Mr. Gaddis had known that the trusses had been delivered, as I mentioned earlier, and had even planned for the trusses to be delivered to one side of the lot in order to avoid the overhead power lines. However, Mr. Gaddis failed to inform the subcontractors of the hazard and informed two failed subcontractors of his plan for the safe installation of the trusses. Here it shows in the record that Mr. Gaddis had known of the violative condition, that a Century manager had seen the violative condition, and therefore there is substantial evidence to support the ALJ's finding. In regards to constructive knowledge, there is substantial evidence to show that with the exercise of reasonable care, Mr. Gaddis could have known of the violative condition, the alternative. Mr. Gaddis, as I mentioned, had expected the delivery of the trusses and could have taken the reasonable steps to follow up with the arrival of the crane and the operation that would take place to move the trusses onto the house. The record shows, and there is substantial evidence to support the ALJ's finding, that Century had constructive knowledge of the violative condition. Your Honor, here Century knew of the violative condition, however failed to take any reasonable actions to prevent it. The Secretary asked that the Court affirm the ALJ's decision and hold Century liable for its failure to meet its duty of care. Thank you very much. Mr. Polk, we'll give you two minutes for rebuttal, and I'd like to ask you to start with the constructive knowledge argument. Even if we were to think that the ALJ, that there was not substantial evidence that there was actual knowledge, what do you do with the constructive knowledge argument? Well, once again, Your Honor, I think with respect to constructive knowledge, basically the judge at the same time had knowledge about that he was on the lot the previous day, and it's interesting. Well, I mean, Century was in control of this lot, right? Yes, Your Honor. They knew that trusses were going to be lifted. They knew there was a power line overhead. They knew that there was going to be a crane involved. And there's no evidence that they engaged in any training or discussions about the safety factors. So why shouldn't they be charged with constructive knowledge? Well, once again, it's assuming that Mr. Gatz had the constructive knowledge because he, in fact, was on the site the day before. His information was, I looked at the site. They're not going to be needing a crane for a while because it's going to take at least more than one day before the truss is going to be raised. He made that determination as the construction manager based on his knowledge of the process that they were doing. He did not know that the crane had been ordered. He insisted that he had set up that the trusses that were delivered were on the far left-hand side of the house where the power lines were on the other side of the property. And that's enough? That's all you need to do is to see that the trusses are over here and the power line is there? You don't need to engage in any sort of proactive discussion about that? Well, once again, he would not, he would, I think it kind of ties in with respect to reasonable reliance on the crane operator who is knowledgeable about that. And I think it's clear in the testimony or the deposition of Mr. Sadwick that he knew exactly where those power lines were. He knew where he had to set the crane up. He purposely set that crane up and it was Mr. Gaddis' understanding that the list would be all on the left-hand side, completely away from it. With respect to just one point on reasonable reliance, the Secretary noted the fact that, well, Mr. Gaddis didn't tell Mr. Sadwick. Mr. Sadwick knew where those lines were. He stated that clearly. He set up that crane on purpose, had a purpose there. Then I just want to touch really shortly on reasonable care. I've taken most of your time for rebuttal, but I'll give you 30 more seconds. All right. With respect to reasonable care, this is an important issue because what you have on the multi-employer doctrine, if you're able to establish that you're a controlling, the Secretary is a controlling employer, you still have to, and this is where the judge bypasses it and says, well, you don't have to look at the exercise of reasonable care section, the two parts there in the compliance directive. But you cannot say, just because you have actual knowledge, that does not relieve the burden of the Secretary to prove those two points because, and I think the briefs show that they were, in fact, we did show reasonable care exercised by century. Because if you meet those, then the multi-employer doctrine does not apply. And that means, as a result, that only direct employees of the employer that are exposed can be cited in the standards. So that's why this is so important. Thank you. Thank you very much. The case is submitted.
judges: Griffith, Katsas, Rao